**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 99-41372**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

**VERSUS**

**HENRY BLUME LOE,**

**Defendant-Appellee.**

---

**No. 99-41506**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**HENRY BLUME LOE,**

**Defendant-Appellant.**

---

Appeals from the United States District Court
for the Eastern District of Texas

---

August 15, 2001

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In April 1998, a multi-count, superseding indictment was returned against several individuals including Defendant Henry Blume Loe ("Blume Loe"). Among the various counts charged against Blume Loe were those for conspiracy to defraud the United States, submitting false statements, and tax fraud. After several weeks of trial, a jury convicted Blume Loe of all ten counts that were charged against him, but the district court ultimately granted a judgment of acquittal with respect to five of the counts.

On appeal, the government seeks a reversal of the district court's judgment of acquittal. Blume Loe cross-appeals, hoping to reverse his remaining convictions and sentences. For the following reasons, we affirm the convictions and sentences assessed against Blume Loe, but reverse the district court's judgment of acquittal.

## I. BACKGROUND

In 1946, the Loe family started Loe's Highport, Inc. ("LHI"), a marina located on Lake Texoma on property leased from the United States Army Corps of Engineers ("COE"). At the times pertinent to these appeals, Cornelius Dewitte Loe, Jr. ("C.D. Loe"), and Babo Beazley Loe ("Babo Loe") operated LHI. Of their three sons, only Blume Loe worked at the marina. Neither Cornelius Dewitte Loe, III, nor William Loe played a significant role in the marina's operations, and neither was charged with any criminal activity in

2

the indictment.

In 1996, the Federal Bureau of Investigation executed a search warrant on the marina facilities of LHI, which later culminated in the multi-count indictment against Blume Loe, C.D. Loe, Babo Loe, and others. Not all of the counts were pressed against all of the defendants. Thereafter, the district court partially granted a motion to sever, and a trial on some of the counts against some of the defendants occurred. That first trial pertained to Counts 17, 22-25, and 29-31 of the multi-count indictment and did not involve Blume Loe. The second trial concerned the remaining counts and included Blume Loe as a defendant. Approximately five weeks into the second trial, however, one of Blume Loe's attorneys became ill and was unable to proceed. As a result, the district court severed Blume Loe's case and continued the trial with the remaining defendants.

When the government finally proceeded with the third trial against Blume Loe, he faced ten criminal counts, generally grouped into three categories. First, Counts 1-5 charged Blume Loe with conspiracy to defraud the COE and related substantive acts of submitting false statements. Under the lease agreement with the COE, LHI owed rent based upon a percentage of the gross receipts of its business. LHI reported the rent to be paid on a COE form called the "Graduated Rent System Rental Computation Form." Count 1 alleged that Blume Loe entered into a conspiracy to defraud the COE by submitting false rental numbers, and Counts 2-5 complained

3

of individual substantive acts of submitting false statements. Second, Counts 12-15 charged Blume Loe with making false statements on his personal income tax returns for the 1992-95 tax years. The government maintained that in the returns for those years, Blume Loe underreported his income and did not include as compensation thousands of dollars that he received from an off-the-books account of LHI. Third, Count 16 charged Blume Loe with failing to file a Form 8300, a document required to be filed with the Internal Revenue Service whenever a person receives $10,000 or more in cash or cash equivalents in a business transaction. Specifically, the government alleged that Blume Loe sold a boat to Gene DeBullet in or around November 1994 for $21,000 in cash and that Blume Loe failed to file a Form 8300 reporting that transaction.

The jury convicted Blume Loe on all counts, but the district court granted a judgment of acquittal with respect to Counts 1-5.[1] In general, the district court held that there was no evidence that Blume Loe had anything to do with completing or filing the rental reports with the COE or in supervising those persons who did. The government filed this appeal to seek review of that judgment. Blume Loe cross-appeals, maintaining that: 1) there was insufficient evidence to support his convictions for the other five counts; 2) the district court erred in calculating his sentence; 3)

---

[1]Blume Loe moved for a judgment of acquittal on all counts after the close of the government's case in chief. The district court took the matter under advisement and filed an order three months after trial had ended.

4

the district court made improper evidentiary rulings; and 4) the district court should have granted his motion for a mistrial based on prejudicial communications between the jurors and others.

## II. DISCUSSION

A. Counts 1-5

The government maintains that the district court erred in granting Blume Loe's motion, pursuant to Rule 29, for a judgment of acquittal on Counts 1-5. When reviewing such a decision, we give no deference to the district court's ruling. **United States v. Baytank (Houston), Inc.**, 934 F.2d 599, 616 (5th Cir. 1991). Instead, we review *de novo* a district court's grant of a judgment of acquittal, applying the same standard as the district court. **United States v. Sanchez**, 961 F.2d 1169, 1179 (5th Cir. 1992). That standard asks whether a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict. *See* **United States v. Scott**, 159 F.3d 916, 920 (5th Cir. 1998). The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. **Baytank**, 934 F.2d at 616. "'A jury is free to

choose among reasonable constructions of the evidence.'" **Id.**
(quoting **United States v. Bell**, 678 F.2d 547, 549 (5th Cir. Unit B
1982) (en banc)). And it retains the sole authority to weigh any
conflicting evidence and to evaluate the credibility of the
witnesses. **United States v. Millsaps**, 157 F.2d 989, 994 (5th Cir.
1998).

As previously noted, Count 1 alleged that Blume Loe, his
mother Babo Loe, and others entered into a conspiracy to defraud
the COE by submitting false rental numbers, in violation of 18
U.S.C. § 371, and Counts 2-5 complained of individual substantive
acts of submitting false statements, in violation of 18 U.S.C. §
1001.[2] The crux of those five charges pertained to the conspiracy
charge as the individual substantive act counts were predicated on
**Pinkerton v. United States**, 328 U.S. 640 (1946).[3] To establish a
violation of 18 U.S.C. § 371, the government must establish beyond
a reasonable doubt: 1) that two or more people agreed to pursue an

---

[2]The indictment also referred to the aiding and abetting statute,
18 U.S.C. § 2.

[3]"In **Pinkerton**, the Supreme Court held that 'a party to a
conspiracy may be held responsible for a substantive offense
committed by a coconspirator in furtherance of a conspiracy, even
if that party does not participate in or have any knowledge of the
substantive offense.'" **United States v. Gobert**, 139 F.3d 436, 439
n.22 (5th Cir. 1998) (quoting **United States v. Jensen**, 41 F.3d 946,
955-56 (5th Cir. 1994)). Blume Loe's liability for the substantive
offenses appears to be based on his coconspirators' actions, which
were apparently clear violations of 18 U.S.C. § 1001. Blume Loe
does not challenge the government's reliance on **Pinkerton** for
Counts 2-5.

unlawful objective; 2) that the defendant voluntarily agreed to join the conspiracy; and 3) that one or more members of the conspiracy committed an overt act in furtherance of the conspiracy. *United States v. Dien Duc Huynh*, 246 F.3d 734, 745 (5th Cir. 2001).

Here, the district court generally observed that "[t]here is no evidence that Henry Blume Loe had anything to do with completing or filing the rental reports with the Corps of Engineers or supervised those persons who did."  It further recited the substance of various aspects of the government's evidence: 1) testimony and written job descriptions indicating that Blume Loe had an important role and major duties at LHI; 2) testimony stating that Blume Loe was brought in to run the business; 3) testimony observing Blume Loe's attendance in Babo Loe's office discussing marina business; 4) and testimony from Marie Ward, a coconspirator of Babo Loe's, that Blume Loe returned from a meeting with the COE and stated certain possibly incriminating statements. Despite the standard of review afforded motions for judgments of acquittal, the district court found the evidence insufficient.  Ultimately, the district court seemed persuaded by the fact that there was no direct evidence of Blume Loe's participation in accounting functions and by the fact that, regardless of any title held by Blume Loe, the bulk of the evidence showed that Babo Loe ran the marina.

Babo Loe's management of LHI, however, does not mean that

7

Blume Loe did not or could not have entered into a conspiracy as to the underreporting of boat sales. Admittedly, none of the evidence presented to the jury directly linked Blume Loe with the COE reports. The government's case clearly rested on circumstantial evidence. We, however, do not differentiate between direct and circumstantial evidence when reviewing a grant of a judgment of acquittal. *See Scott*, 159 F.3d at 920. The key issue then is whether the circumstantial evidence established all of the essential elements of the crime beyond a reasonable doubt, and we must draw all reasonable inferences from that evidence in favor of the verdict.

Doing so, we find that the evidence cited by the district court, and the evidence it did not mention, sufficient to convict Blume Loe of a § 371 violation. A reasonable inference from the testimony about Blume Loe being the "heir apparent" of the marina business and from the job descriptions and other evidence indicating Blume Loe's level of responsibility at the marina is that he knew about the underreporting of boat sales.[4] It is not unreasonable to infer that a son presumed to be the next head of the corporation would probably know what is going on with the affairs of that business, especially in light of his frequent

---

[4]One of the descriptions denoted his responsibilities as including 1) the supervision of employees in all departments, 2) the review of weekly payroll and sales reports, and 3) the review of monthly corporate financial statements.

meetings with the parent that supposedly ran the business. Furthermore, the jury could have reasonably concluded that Babo Loe would not have sent Blume Loe to meet with the COE, where the parties talked about matters such as future development and the new lease format, unless he had some knowledge regarding the reporting of boat sales. And most importantly, a reasonable inference from Ward's testimony about the statements made by Blume Loe after he returned from meeting with the COE is that he knew about LHI's underreporting. Ward testified on direct testimony that after returning from the COE meeting in Tulsa, Blume Loe said that "the Corps told him that everyone kept two sets of books." On cross, she responded positively to defense counsel's question as to whether Blume Loe told her that the COE stated that LHI was due a refund because LHI had been overpaying for brokerage boats and that he wanted her to go back and try to calculate the refund. Later on re-direct, Ward elaborated, stating that she told Blume Loe that she did not have time and that the recalculation "wouldn't offset the other changes [LHI] had already made." By "other changes," Ward meant prior underreporting by LHI. The jury could have reasonably inferred that Ward's statement that any new calculations would not offset the previous other changes reflected a common knowledge and tacit agreement by the parties involved in the underreporting. There is no evidence showing that Ward had to define "other changes" to Blume Loe or that Blume Loe responded in any fashion demonstrating innocence. Rather, the evidence in the

9

record seems to suggest that Blume Loe accepted, without challenge, Ward's comments. Thus, even the evidence recited by the district court could reasonably create the inference in the minds of the jurors that Blume Loe knew of and was involved in the reporting of the COE forms.

What is also equally damning of Blume Loe is the evidence that the district court failed to discuss in its order. Besides failing to note that Blume Loe sought the COE meeting, where the parties discussed future development and the new lease format, the district court did not evaluate in its order Blume Loe's control and access over the bank account where LHI kept the proceeds of the boat sales that were not reported to the COE, and which he definitely utilized for personal purposes. With respect to that latter fact, a jury could have reasonably inferred that a person utilizing thousands of dollars from a bank account would have had some knowledge of how that money got there and had some direction in the money's procurement.

We recognize that some of the circumstantial evidence in isolation can be read to suggest a possibility other than guilt. But when viewed in the light most favorable to the verdict, neither the total composition of that evidence nor certain items, such as Blume Loe's control over the off-the-books bank account and his statements to Ward after the COE meeting, seem to suggest an equally viable theory of innocence. So long as a reasonable trier of fact could find that the evidence established guilt beyond a

reasonable doubt, the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *Baytank*, 934 F.2d at 616. That is the case here, and the jury was free to choose among the reasonable constructions of the evidence: one of which was consistent with Blume Loe's guilt. *Id.* Therefore, we reverse the district court's grant of a judgment of acquittal; we direct that the district court reinstate the jury's guilty verdict on Counts 1-5; and we remand for sentencing proceedings consistent with these determinations.

B.   Counts 12-15

On his cross-appeal, Blume Loe questions the sufficiency of the evidence with respect to his convictions for Counts 12-15. Those counts charged Blume Loe with making false statements on his personal income tax returns for the 1992-95 tax years, in violation of 26 U.S.C. § 7206(1).[5] During each of those years, besides his normal salary compensation, Blume Loe received approximately $90,000, which he used to pay the premiums on a life insurance policy on Babo Loe. He also received various smaller amounts, which were not utilized for the life insurance premiums. The

---

[5]To establish a violation of § 7206(1), the government must show that 1) the accused willfully made and subscribed to a tax return, 2) the return contained a written declaration that it was made under penalties of perjury, and 3) the accused did not believe that the return was true as to every material matter. *United States v. Mann*, 161 F.3d 840, 848 (5th Cir. 1998).

11

monies given to Blume Loe came from the off-the-books account, into which LHI diverted sales income that it did not report to the COE. Blume Loe's tax returns did not include the extra monies as income. According to Blume Loe, the government did not establish a violation of § 7206(1) because it failed to prove 1) that the extra monies constituted compensation or taxable income and 2) that he knew that the income was taxable income.

We need not expend too much energy on Blume Loe's arguments as they are unavailing. The government introduced substantial evidence reflecting Blume Loe's guilt. First, Babo Loe maintained "commission files" that indicated that much of the additional monies received by Blume Loe were commission payments, i.e., taxable income. Second, several government exhibits showed that Blume Loe claimed a salary in excess of $100,000 a year, far more than the $52,000 that he noted on his income tax returns. Third, after the government began its investigation of LHI and the Loes, Blume Loe's 1996 W-2 form suddenly complied with the greater income figures, reporting that he made in excess of $100,000. Fourth, Blume Loe left a job making more than $100,000 a year to come work at LHI. The jury could have reasonably inferred that Loe would not have taken a 50% pay cut unless other remuneration would be provided. Fifth, the jury could have reasonably concluded that based on the fact that Blume Loe oversaw the sales department and reviewed the salesmen's commissions and the fact that he himself was eligible for those commissions, Blume Loe knew that he would

12

receive more than the reported $52,000 salary. Finally, the jury could have reasonably inferred from LHI's and the Loes' underreporting of boat sales that LHI would need a way to dispose of some of the extra funds and that under-the-table money to Blume Loe would be a good candidate for such funds. In light of all the proffered evidence, we believe that sufficient evidence existed for the convictions on Counts 12-15.

C.    Count 16

Blume Loe also appeals his conviction on Count 16, which charged Blume Loe with failing to file a Form 8300, a document required to be filed with the Internal Revenue Service whenever a person receives $10,000 or more in cash or cash equivalents in a business transaction, in violation of 26 U.S.C. §§ 6050I(a) and 7203. Specifically, the government alleged that Blume Loe sold a boat to Gene DeBullet in or around November 1994 for $21,000 in cash and that Blume Loe failed to file a Form 8300 reporting that cash transaction. In his brief, Blume Loe generally contends that the evidence was insufficient because he was not present during the actual cash transaction nor directed anyone not to file the form. Instead, he maintains that he told Ward to write out a receipt for DeBullet.

Having reviewed the considerable evidence proffered by the government, however, we find Blume Loe's argument meritless. Although he initially contends, and points to evidence, that he was not the one who received the cash from DeBullet for the boat sale, other testimony contradicts that view. We must defer to the jury's assessment of credibility and accept its apparent belief that Blume Loe obtained the cash from DeBullet and then gave it to Ward. The evidence clearly established that before the DeBullet sale, Blume Loe knew about the reporting requirement, that he had personally made boat sales exceeding $10,000 in cash, and that he had attempted to divert those funds so as to escape the reporting requirement. Furthermore, the evidence revealed that Blume Loe lied to the IRS about not having done cash sales greater than $10,000, that he refused to turn over records to the IRS, and that neither he nor LHI had ever filed a Form 8300 on sales exceeding $10,000. Thus, at the time of the DeBullet sale, the evidence suggested that the jury could reasonably infer that Blume Loe had the intent and knowledge to do the crime.

Of course, Blume Loe insists that he bears no responsibility because he instructed Ward to document the transaction and because he never told her not to do the Form 8300. But asking Ward to document the sale does not mean that he wanted her to do the form. Instead, the record indicates that LHI's routine was not to file the Form 8300; hence, a reasonable inference could have been that Blume Loe was relying upon Ward to do the regular thing and not

14

file it.  In any case, evidence showed that Blume Loe was the person responsible for filing the Form 8300, and he cannot escape blame for failing to do that act.  Accordingly, we reject his sufficiency of the evidence challenge as to Count 16.

D.   Evidentiary Rulings

Besides his sufficiency of the evidence claims, Blume Loe argues that the district court committed an "identifiable pattern of consistently erroneous evidentiary rulings that disregarded the evidentiary requirements and resulted in cumulative error that was harmful in nature."  He charges that the district court "repeatedly allowed summary witnesses with no personal knowledge whatsoever of the events at issue to testify as to documents about which they had no personal knowledge."  In addition, Blume Loe contends that the district court admitted documents that were never properly authenticated and that were never shown to be admissible business records.

We review a district court's evidentiary rulings for abuse of discretion.  *United States v. Wilson*, 249 F.3d 366, 374-75 (5th Cir. 2001).  After reviewing Blume Loe's specific allegations, the district court's rulings, and the applicable law, we find no such abuse.  Accordingly, the district court's evidentiary rulings are affirmed.

15

E.   Alleged Sentencing Errors

Blume Loe also avers that the district court erred in its calculation.  With respect to that claim, he points to several purported mistakes.  First, Blume Loe maintains that the money he received and then used to pay the life insurance premiums each year should not have been included in the tax loss calculation for 1993-95.  Second, he argues that the district court erred in evaluating LHI's purchase of a home in 1990 on his behalf as relevant conduct and in including the "tax due" on that house in the tax loss calculation.  Third, Blume Loe believes that the district court's decision to include the value of the home as taxable income for the tax loss calculation violated the holding of *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000).[6]  Fourth, Blume Loe challenges the district court's inclusion in its tax loss calculation $34,314.92 that Babo Loe's notes indicate were paid "tax-free" to Blume Loe.  He states that the evidence is unclear as to whether he received the money and that Babo Loe's intent was to give the funds tax-free.  Finally, Blume Loe contends that the district court wrongly utilized a 34% corporate tax rate in calculating the tax loss, rather than the applicable 28% rate.

We review the district court's interpretation and application of the sentencing guidelines *de novo*.  *United States v. Hill*, 42

---

[6]*Apprendi* held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury.  120 S. Ct. at 2363-64.

16

F.3d 914, 916 (5th Cir. 1995). On the other hand, factual findings of the district court, such as what constitutes relevant conduct, must be supported by a preponderance of the evidence and are reviewed for clear error. *United States v. Nevels*, 160 F.3d 226, 229 (5th Cir. 1998). An amount of loss finding is also reviewed for clear error. *Hill*, 42 F.3d at 919.

Upon reviewing Blume Loe's arguments, the record, and the applicable law, we find his points of error unavailing. With respect to his first point, it resembles his sufficiency of the evidence claims against Counts 12-15. We previously found the evidence sufficient for Counts 12-15; and here, despite the different standard, we find no clear error in the district court's assessment to include the $90,000 per year payments in the tax loss calculation. Likewise, we do not believe that the district court clearly erred in including the home and its value. The evidence revealed that Blume Loe "took" a substantial pay cut to come to LHI, and the district court could have reasonably inferred that the house was intended to be additional compensation. That finding is buttressed by the fact that Blume Loe's compensation suddenly jumped after the government began its investigation of LHI and the Loes. The district court could reasonably infer from that sudden jump that Blume Loe's actual compensation in the earlier years included the value of the home and that he was merely not reporting it. Additionally, including the home's value as relevant conduct

did not amount to an ***Apprendi*** violation. Contrary to Blume Loe's assertion, the district court's consideration of the home's value did not result in a sentence in excess of the statutory maximum. Blume Loe received a sentence well within the three-year statutory maximum for a violation of § 7206(1). As for Blume Loe's contention that the district court should not have included the $34,314.92 that Babo Loe purportedly gave tax-free, we again conclude that the district court did not clearly err. That sum was part of the amount that formed the basis of Count 14, and the government meticulously traced the checks and the funds that comprised virtually all of the contested amount to LHI corporate funds. Finally, we see no support for Blume Loe's argument that the district court applied an incorrect tax rate. The revised presentence report reflects application of a 28%, not 34%, tax rate. In light of the preceding, we conclude that Blume Loe's contentions with respect to his sentence are without merit.

F.  Mistrial

The final item in Blume Loe's cross-appeal relates to the district court's denial of his motion for a mistrial based on allegations of juror misconduct. We review such denials for abuse of discretion. ***United States v. Denman***, 100 F.3d 399, 405 (5th Cir. 1996).

Here, two allegedly improper contacts with the jury occurred. In the first incident, one of the bailiffs essentially told the

18

jurors that the present case had been previously tried with other defendants, that the case had to be severed because of health problems associated with one of the defense counsel, that the district court believed that the case should be decided within three weeks, and that the trial could last much longer if it did not end in three weeks. Upon learning of the possible length of the trial, the jurors all groaned. In the second incident, a juror ran into one of the government's witnesses during lunch. That witness told the juror that he was testifying for the second time due to the prior trial being called off because of a defense counsel's heart attack. When the district court became aware of the two incidents, it conducted interviews with each juror. The district court found no prejudice and continued with the trial, although it did remove the offending bailiff.

Blume Loe contends that through the contacts, inadmissible information reached the jury, abridging his Sixth Amendment right to confront the evidence against him and resulting in convictions based in part on guilt by association. We disagree. None of the communications arising from the contacts were material or prejudicial. They did not inform the jurors about the outcome of the prior trial nor did they cast any aspersions on Blume Loe or the other defendants in the prior trial. Furthermore, the communications did not concern any facts that would necessarily have been a focus of cross-examination by the defendant. Consequently, we conclude that the district court did not abuse its

discretion in denying Blume Loe's motion for a mistrial based on allegations of juror misconduct.

### III. CONCLUSION

For the foregoing reasons, we affirm the convictions for Counts 12-15 and for Count 16; we reverse the grant of a judgment of acquittal on Counts 1-5; we direct that the district court reinstate the jury verdict of guilty on Counts 1-5; and we remand the case for resentencing consistent with this opinion.