**Revised July 19, 2002**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-10017
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK LENARD SMITH; TERNARD ANTOINE POLK,

Defendants-Appellants.

_____

Appeals from the United States District Court
For the Northern District of Texas

_____

June 26, 2002

Before HIGGINBOTHAM and CLEMENT, Circuit Judges.[*]

CLEMENT, Circuit Judge:

Defendants-Appellants Derrick Lenard Smith ("Smith") and Ternard Antoine Polk ("Polk") appeal from their convictions for three counts of attempted murder. They argue that the jury's verdict lacks evidentiary support and that the district court improperly enhanced their sentences. We disagree and affirm the Appellants' convictions.

---

[*] Judge Politz was a member of the panel that heard oral arguments. However, due to his death on May 25, 2002, he did not participate in this decision. This case is being decided by a quorum pursuant to 28 U.S.C. § 46(d)(1996).

## I. FACTS AND PROCEEDINGS

On the morning of June 19, 2000, Smith and Polk robbed the Chase Bank in Irving, Texas, escaping with more than $10,000. A bank customer witnessed the robbery from the drive-through lane, followed the Appellants as they fled the scene, and reported their location to the police. Shortly thereafter, Irving Police Department Officer John Lancaster ("Lancaster") began pursuing the suspects. Officer Lancaster followed Smith and Polk as they headed towards Dallas, and he approached the suspects' vehicle on foot when it appeared to be stopped in heavy traffic. As Lancaster drew near, Smith exited from the passenger side, fired at Lancaster, and fled with Polk driving. Lancaster retreated to a convenience store parking lot, and Dallas Police Officers Thomas Jump ("Jump") and Ronald Hubner ("Hubner") took over the pursuit.

Smith fired between 20 and 30 rounds at Jump and Hubner's vehicle, eventually disabling it. With Jump and Hubner incapacitated, Dallas Police Officers Kenney Lopez ("Lopez") and Percy Trimble ("Trimble") led the chase, which was now proceeding towards downtown Dallas on Interstate 35. Also in pursuit were FBI agents D. Richard Burkhead ("Burkhead") and Christy Jones ("Jones"), who were in charge of the federal investigation into the robbery. On the interstate, Smith began firing upon innocent motorists in an attempt to cause a crash. The Appellants exited

2

the interstate, ambushed Trimble and Lopez in a residential neighborhood, and disabled that squad car as well. Shortly after the ambush, Smith jumped from the moving car, and Dallas Police Officer Mike Walton ("Walton") pursued him on foot. Smith was eventually captured hiding in a doghouse, and Polk was arrested when his car broke down a short time later.

After a jury trial, Smith and Polk were each convicted of one count of conspiracy to commit bank robbery, one count of bank robbery, and one count of using and carrying a firearm during the bank robbery. They were also each convicted of three counts of attempted murder for shooting at Walton, Trimble and Lopez; three counts of using and carrying a firearm during the attempted murders; and one count of being a felon in possession of a firearm. Smith and Polk do not contest their bank robbery convictions on appeal. However, they challenge their convictions for attempted murder and the imposition of a 25 year minimum sentence for using and carrying a firearm during those crimes. In addition, Smith challenges his sentence enhancement for discharging a firearm during a crime of violence.

## II. ANALYSIS

### A.   Sufficiency of the Evidence: the Attempted Murder Convictions

For shooting at Officers Lopez, Trimble and Walton, Smith and Polk were convicted of attempted murder under 18 U.S.C. § 1114. § 1114 imposes penalties on:

> Who[m]ever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance. . . .

18 U.S.C. § 1114 (2001). The Appellants contend that their convictions under § 1114 must be vacated because there is no evidence that the Dallas police were assisting a federal officer.

The standard of review in assessing a challenge to the sufficiency of the evidence in a criminal case is whether a "reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982)(en banc), *aff'd on other grounds*, 462 U.S. 356 (1983). "In evaluating the sufficiency of the evidence, a court views all evidence and all reasonable inferences drawn from it in the light most favorable to the government." United States v. Mergerson, 4 F.3d 337, 341 (5th Cir. 1993).

We find that the evidence, viewed in the light most favorable to the government, supports the jury's conclusion that Lopez, Trimble and Walton were assisting FBI Agent Burkhead in a federal bank robbery investigation. Agent Burkhead learned about the robbery within a half-hour of its occurrence and immediately left his office for the bank. En route to the scene, Burkhead heard a radio report that the Dallas police were chasing the suspected

4

robbers, and he and his partner joined in the pursuit. At this point, a federal investigation was clearly underway; and by pursuing the bank robbery suspects, the Dallas police were assisting the FBI.

In addition, throughout the pursuit the Dallas Police Department ("DPD") was acting pursuant to a joint bank robbery task force with the FBI. DPD Sergeant James Smith ("Sergeant Smith"), the supervisor in charge of the car chase, knew that the pursuit began with a bank robbery and that the DPD and the FBI regularly work together on bank robbery cases. Sergeant Smith testified:

> We worked with the FBI. We have a task force that works with the FBI on bank robberies. Anytime there's a bank robbery, a supervisor [objection by both defendants overruled by the district court] – When there's a bank robbery in Dallas, a Dallas sergeant or above responds to ensure that all the crime scene investigation and cooperation between the people, the witnesses and the officers and the FBI is coordinated and everything goes smoothly. We have an officer with the task force that works with the city robberies to assist and work with them and our goal is to assist and work with them in any way we can.

Smith and Polk argue that because Dallas police officers Jump, Trimble, and Lopez responded to a report about shots being fired at Irving police officers, not a reported bank robbery, they were not cooperating with the FBI's investigation. It is sufficient, however, that the supervising officer knew that the pursuit began with a bank robbery and was aware that his department often cooperated with the FBI on bank robbery cases, given his supervisory role in the pursuit.

5

Finally, Smith and Polk were only charged for attempted murder in connection with the shootings that occurred after the FBI became involved in the pursuit. They did not face federal charges for firing on Officers Lancaster, Jump or Hubner.

Since the Dallas police officers and the FBI agents were jointly pursuing a suspect in a federally-investigated bank robbery, Smith and Polk attempted to kill three individuals who were assisting a federal officer. Accordingly, we find the jury's determination that the assaulted officers were assisting FBI agent Burkhead is sufficiently supported by the evidence.

Our conclusion in the instant case comports with Fifth Circuit precedent. In United States v. Hooker, 997 F.2d 57 (5th Cir. 1993), the defendant attacked a state narcotics agent who was assisting the federal Drug Enforcement Administration with an investigation. Adverting to the Fifth Circuit's "expansive view" of § 1114, the Hooker court held that the attack on the state agent fell within the statute's coverage because the agent was "acting in cooperation with federal officers in a federal operation when he was assaulted." Id. at 74.[1] Similarly, in the instant case we

---

[1] We note the Appellants' argument that § 1114 has been rewritten since Hooker was decided. In 1996, Congress substituted "a general reference to killing or attempting to kill any officer or employee of any agency in any branch of the United States Government for more specific references to killing or attempting to kill certain enumerated officers and employees of the United States." 18 U.S.C. § 1114 (2001) (Historical and Statutory Notes). In our view, the statute in its current form provides even broader coverage.

6

find that Officers Lopez, Trimble and Walton were cooperating with the FBI in a federal bank robbery investigation.

## B. Improper Prosecutorial Remarks

Appellant Smith next argues that the government improperly explained the elements of an offense under § 1114 to the jury. We review alleged improper prosecutorial remarks to determine whether they are "inappropriate and harmful." United States v. Lowenberg, 853 F.2d 295, 301 (5th Cir. 1988)(quoting United States v. Chase, 838 F.2d 743, 749 (5th Cir.)).

Smith contends that the government erroneously told the jury that it could base a conviction under § 1114 on the federal nature of the bank robbery, rather than on a determination of whether the assaulted officers were assisting the FBI. In other words, Smith argues that the government mislead the jury into believing that § 1114 applies whenever a federal crime has been committed. During closing arguments, the government asked the jury "How can you say these officers were not assisting in the apprehension of a federal offender?" Smith characterizes this question as an improper instruction that § 1114 applies to anyone who attempts to apprehend a federal offender, instead of to anyone who assists a federal officer. We disagree, and we find that the question properly informs the jury that the officers are protected by § 1114 if they

7

were "assisting [the FBI] in the apprehension of a federal offender."

Smith also complains that the government repeatedly emphasized that his offense began as a bank robbery: "This offense. . .started out as a bank robbery. . .[i]t all started as a bank robbery and ended as a bank robbery. . . . Those officers were attempting to apprehend a bank robber." Although a federal offense, standing alone, is insufficient to support a conviction under § 1114, we do not find that emphasizing the bank robbery constitutes a misstatement of law. Smith has inferred an improper instruction from otherwise innocuous remarks, and it is far from clear that the jury interpreted the government's statements in the same way as Smith. Moreover, the judge's instructions to the jury make clear that the court, not the government, is the only source for instructions on the law.[2] Accordingly, we do not find that the government inappropriately instructed the jury.

## C. Sentence Enhancements

### 1. Standard of Review

Finally, the Appellants object to the district court's enhancement of their sentences. The Court reviews de novo whether

---

[2]The jury charge includes statements such as the following: "It is... my duty at the end of the trial to explain the rules of law that you must follow and apply in arriving at your verdict."; "[I]t is your sworn duty to follow all the rules of law as I explain them to you."; "It is your duty to apply the law as I give it to you...."; "[W]hat the lawyers say is not binding on you."

a fact is an element of an offense or merely a penalty enhancer. *See* <u>United States v. Chandler</u>, 125 F.3d 892, 894-95 (5th Cir. 1997).

**2.   Subsequent Conviction under 18 U.S.C. § 924(c)(1)(A)**

Both Appellants were convicted of four counts of possession of a firearm during and in relation to a crime of violence. 18 U.S.C. § 924(c)(1)(A) imposes a minimum sentence of five years for this offense. For a second or subsequent conviction under § 924, the minimum sentence increases to 25 years. *See* 18 U.S.C. § 924(c)(1)(C)(i)(2001). In the instant case, both defendants were convicted of Count Three, which charged them with using a firearm during the bank robbery. The defendants were also convicted of Counts Five, Seven and Nine, which charged them with using a firearm during the attempted murders. Accordingly, the district court imposed the mandatory minimum sentence of 25 years for Counts Five, Seven and Nine under 18 U.S.C. § 924(c)(1)(C)(i). On appeal, Smith and Polk argue that the jury should have been required to make specific findings on whether Counts Five, Seven and Nine were subsequent offenses.

The Appellants' argument is foreclosed by <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986). In <u>McMillan</u>, the Supreme Court upheld a statute that permitted a sentencing court, rather than a jury, to find facts that raised the mandatory minimum sentence. *See* <u>id</u>. at 88. The Supreme Court, although divided in its

9

reasoning, recently held that McMillan survives Apprendi v. New Jersey, 530 U.S. 466 (2000):

> When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence withing the range without seeking further authorization from those juries- and without contradicting Apprendi.

See Harris v. United States, No. 00-10666, 2002 WL 1357277, at __ (U.S. June 24, 2002) (plurality).[3]

Furthermore, in Deal v. United States, 508 U.S. 129 (1993), the Supreme Court affirmed a sentence under § 924(c)(1) almost identical to the sentences imposed in the instant case. Because Apprendi does not apply to increases of the mandatory minimum, Harris, Deal and McMillan preclude the Appellants' argument.

### 3.   Discharge of a Firearm

Finally, the district court enhanced Smith's sentence on the firearm charges because he discharged the weapon.  Smith contends that discharging the firearm was a separate offense from using and carrying a firearm, and should have been submitted to the jury. However, this Circuit has rejected Smith's argument in United States v. Barton, 257 F.3d 433, 443 (5th Cir. 2001), which held:

---

[3]Justice Breyer disagreed with the four-justice plurality's reasoning distinguishing Apprendi, but he joined the court's judgement affirming Harris' sentence and joined the plurality opinion "to the extent that it holds that Apprendi does not apply to mandatory minimums." Harris 2002 WL at __.

10

"In light of the language, structure, context, and legislative history of § 924(c)(1)(A), we join the vast majority of circuits that have reviewed this or a similar issue to conclude that subsections (i), (ii), and (iii) set forth sentencing factors, not separate elements of different offenses."

## III. CONCLUSION

For the foregoing reasons, the Appellants' convictions under 18 U.S.C. § 1114 are adequately supported by the evidence, the government did not make improper remarks to the jury, and the district court did not err in enhancing the Appellants' sentences.

AFFIRMED.