United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 21, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 03-10005

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

MALICH CHIKE REED,

Defendant - Appellee.

———————————————

No. 03-10060

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MALICH CHIKE REED,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:

Malich Chike Reed robbed a federally insured bank and shot at or attempted to shoot at a Dallas police officer as he fled.  A jury convicted Reed of, <u>inter</u> <u>alia</u>, assault and attempted murder of an officer assisting a federal officer under 18 U.S.C. §§ 111 and 1114 and related federal firearms charges.  The district court

acquitted Reed on the above charges, the government appealed, and Reed cross-appealed.  We affirm the judgment of acquittal because there is insufficient evidence upon which a rational jury could find that the Dallas officer was assisting a federal officer.

I

On April 23, 2002, Reed robbed a federally insured bank.  He fled the scene, carrying a white plastic bag containing $2,248 and an electronic tracking device.  Dallas police officer Ronald Hubner was patrolling the North Dallas area when he heard a police-radio report of the bank robbery.  Hubner discerned that Reed was traveling on a nearby road and began a high-speed pursuit.

While Officer Hubner was pursuing Reed, unit "1187" announced on the Dallas Police Department ("DPD") radio frequency its involvement in the chase.  This identification number is assigned to Dallas Police Detective John Westphalen, who is a member of a Joint Violent Crimes Task Force composed of officers from the Dallas, Mesquite, and Irving police departments as well as members of the FBI.  The primary responsibility of the task force is to coordinate investigations of bank robberies in the Dallas metropolitan area; its members investigate approximately 100 bank robberies a year.  Although the DPD is often responsible for pursuing robbery suspects, the suspects are usually turned over to the FBI, and nearly all face prosecution in federal court.

Immediately before involving himself in Reed's pursuit, Westphalen, along with FBI Special Agent Sean Joyce, had met with

2

an informant in a Dallas-area hotel on an unrelated matter. After the meeting, Westphalen and Joyce returned to Westphalen's vehicle. Joyce accompanied Westphalen as he drove away from the hotel, and they then heard the robbery report come across the police radio.

Meanwhile, Hubner followed Reed as he drove through northern Dallas. Reed eventually stopped his car in a residential neighborhood, where Hubner saw him exit the vehicle carrying a semi-automatic pistol and a white plastic bag. Hubner exited his police cruiser, drew his weapon, and chased Reed on foot between two houses and over two fences. While running, Reed pointed his weapon at Officer Hubner and either fired or attempted to fire it three times; Hubner shot back on each occasion. After Hubner's third shot, Reed threw his weapon on the ground, raised his hands in the air, and surrendered. Within a few seconds, two DPD officers arrived and assisted Hubner with the arrest.

Sometime thereafter, Westphalen and Joyce drove into the alley where Reed was arrested. They approached Reed and asked him to identify himself, but he refused to cooperate with them. Westphalen then used a hand-held detector to recover the electronic tracking device from the bag of stolen money, which Reed had discarded under a nearby vehicle during the foot chase. It is not clear from Westphalen's testimony whether Joyce accompanied him as he tracked down the discarded bag of money.

In July 2002, Reed was indicted for the following federal crimes: (1) bank robbery in violation of 18 U.S.C. § 2113(a) and

3

(d) as well as both (2) the assault and (3) the attempted murder of Hubner, while Hubner assisted "police officers assigned to the Dallas Federal Bureau of Investigation Violent Crimes Joint Fugitive Task Force" and "Special Agents of the Federal Bureau of Investigation then engaged in the performance of their official duties," in violation of 18 U.S.C. §§ 111 and 1114. Additionally, Reed was charged with three counts of using, carrying, and possessing a firearm during a crime of violence (one count for each of the three crimes listed above).

The case proceeded to jury trial. At the close of the government's case, Reed moved for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion, and the jury found Reed guilty of all six offenses.

Six days later, the district court indicated that it would reconsider, sua sponte, Reed's motion for acquittal on the assault, attempted murder, and accompanying firearms charges. In an extensive written memorandum, the court asked the parties to identify, from the record, the membership and mandate of the joint Violent Crimes Task Force and also to brief whether a member of this task force qualifies as an officer or employee of the United States for the purposes of 18 U.S.C. §§ 111 and 1114. The court further asked both parties whether Hubner had to know that he was assisting a federal officer and whether federal officials had to

4

exert control over Hubner's actions for him to be covered by the federal statutes.

After the parties filed their responses, the court entered a judgment of acquittal for Reed on the non-bank robbery charges, concluding that the evidence did not demonstrate, beyond a reasonable doubt, either (1) that Joyce was an active participant in the pursuit of Reed or (2) that Westphalen's status as a joint task force member made him a federal officer for the purposes of 18 U.S.C. §§ 111 and 1114. Specifically, the court set aside the jury verdicts on counts 3 and 5, assault on and attempted murder of Officer Hubner while he was assisting federal officers under 18 U.S.C. §§ 111 and 1114, and counts 4 and 6, using, carrying, and brandishing a firearm during the crimes of violence charged in counts 3 and 5, under 18 U.S.C. § 924(c). The government appealed. After Reed was sentenced on the bank robbery counts, he also filed a notice of appeal, and the two appeals were consolidated.

II

We review a judgment of acquittal de novo, applying the same standard as the district court. United States v. Loe, 262 F.3d 427, 432 (5th Cir. 2001). We must reverse the judgment of acquittal if "a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict." Id.

5

The government argues that the district court erred in finding that Agent Joyce was "simply along for the ride as he and Westphalen traveled to the scene of the arrest" and, therefore, was not an active participant in pursuing Reed.[1] Although the government appeals the district court's judgment of acquittal regarding both the assault and attempted murder charges, the issue for both charges is the same: Whether the evidence before the jury, which we have described above, is sufficient to support a finding that the Dallas police officer, Hubner, was "assisting" the FBI agent, Joyce, for purposes of § 111 and § 1114 before or during the time that Reed assaulted and attempted to kill Hubner. To resolve this evidentiary question, we first consider the statute to see what proof is necessary.

The assault statute, § 111, explicitly protects the same persons described in § 1114, the attempted murder statute. See 18 U.S.C. § 111 ("Whoever . . . forcibly assaults, resists, opposes,

---

[1] Although the government argues that other members of the Violent Crimes Task Force and the FBI were involved in the investigation during Officer Huber's pursuit of Reed, the district court found that no evidence supporting this contention was presented during the trial. The record confirms that a bank employee, Christopher Robertson, testified that he spoke to law enforcement officers, including employees of the FBI, after the robbery. A second bank employee, Heather Jones, also testified that police officers, followed by the FBI, came to the bank after the robbery and that the FBI conducted the robbery investigation. Neither employee, however, indicated how much time elapsed between the robbery and the FBI investigation. If it took more than fifteen minutes for the FBI to arrive, then those events occurred after Reed assaulted and attempted to murder Officer Hubner. Therefore, the district court correctly concluded that the evidence was insufficient to support the government's argument.

6

impedes, intimidates, or interferes with any person <u>designated in section 1114 of this title</u> while engaged in or on account of the performance of official duties" has committed a crime) (emphasis added).  Section 1114 states, in relevant part, that:

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, <u>or any person assisting such an officer or employee in the performance of such duties or on account of that assistance</u>, shall be punished. . . .

18 U.S.C. § 1114 (emphasis added).[2]

Parsing the language of the statutes, we first observe that the offense is to assault or attempt to kill <u>any person assisting</u> a federal officer in the performance of his duties.  We recall the facts here:  At the time Reed fired or attempted to fire a gun at Hubner, Joyce was traveling to the scene of the crime.  There is no dispute that Reed assaulted and attempted to kill Hubner, or that Joyce was a federal officer.  The question then is whether, within the meaning of the statute, Hubner, who was pursuing Reed when the

---

[2]As the district court set aside the convictions under both statutes on the ground that there was insufficient evidence to demonstrate that Officer Hubner was "assisting" an "officer or employee of the United States" during the assault and attempted murder, this Court's interpretation of § 1114's scope will apply equally to both charges, as well as to the accompanying firearms charges. <u>See</u> <u>United States v. Feola</u>, 420 U.S. 671, 684 n.18 (1975) (stating, with respect to §§ 111 and 1114, "we have before us one bill with a single legislative history, and we decline to bifurcate our interpretation" of the meaning of the two statutes).

assault/attempt occurred, was "assisting" Joyce, who, in his official capacity as an FBI agent, was riding in the car on his way to the crime scene.  It seems significant in determining whether Hubner was assisting Joyce at the time of the assault/attempt that Joyce arrived <u>after</u> Reed's assault/attempt to kill Hubner and <u>after</u> Hubner arrested Reed.  The crimes here are assaulting and attempting to kill a police officer who is assisting an FBI agent.

As "assist" is not defined in § 1114, we first look to its plain meaning.  <u>See</u>, <u>e.g.</u>, <u>United States v. Vargas-Duran</u>, 356 F.3d 598, 602 (5th Cir. 2004) (en banc).  The meaning of "assist" does not vary across broad-based English-language dictionaries.  According to Webster's Dictionary, the transitive verb "assist" means "to give support or aid . . . in some undertaking or effort" or "to perform some service for" the object of the assistance.  <u>Webster's Third New International Dictionary</u> 132 (1993).  The Oxford English Dictionary defines "assist" as to "help [or] aid . . . a person in doing something."  <u>Oxford English Dictionary</u> (2d ed. 1989) (available at <http://dictionary.oed.com>).  In addition, "assist" means to "second, support; to succour; relieve," as well as to "stand or remain near," to "stand by" or to "attend" someone.  <u>Id</u>.  Yet another dictionary defines "assist" as "aid" or "help" or to "give aid or support."  <u>The American Heritage Dictionary of the English Language</u> 80 (New College Edition 1981).  And one who assists is an "assistant," which also means "[h]olding an auxiliary position" or "subordinate."  <u>Id</u>.  The meaning of the verb "assist"

8

is thus clear and uncontroverted:  It means to provide supplemental help or support to another in carrying out some task of mutual involvement.

It is an elementary rule of statutory construction that "the words of a statute will be given their plain meaning absent ambiguity."  <u>Texas Food Indus. Ass'n v. United States Dept. of Agric.</u>, 81 F.3d 578, 582 (5th Cir. 1996).  The meaning of "assist" is unambiguous, so we apply its plain meaning here.  To satisfy the requirements of § 111 and § 1114, therefore, Hubner, <u>before or during Reed's assault and attempt on his life</u>, must have been supporting or acting as an auxiliary to Joyce while Joyce was performing his official duties as an FBI agent.[3]

Applying the plain meaning of the words of the statute to the facts of this case, Hubner could not have been "assisting a federal officer" because nothing he did provided support for Joyce in the performance of his official duties in any palpable way.  Indeed, it

---

[3]We note that any assistance that Hubner may have provided to Joyce <u>after</u> Reed assaulted him is irrelevant to our inquiry.  That is, the statutory language has a temporal (and even contemporaneity) element, in the sense that it speaks of the act of "assisting" in the present tense.  To restate the criminal offense in context, it is:  assaulting or attempting to kill a local police officer <u>who is assisting</u> an FBI agent in the performance of his official duties.  The arrangement of words clearly suggests that the defendant's assault or attempt to kill, the local officer's assistance, and the duties being performed by the FBI agent must all be, at least in the same reasonable sense, contemporaneous. Evidence of post-arrest assistance by the DPD to the FBI in this case -- that is, after the assault and attempt occurred and in the absence of involvement by the FBI agent -- fails to satisfy the statutory requirements.

9

is far more nearly accurate to say that it was Joyce who was "assisting" Hubner, by traveling to the scene to lend his support to Hubner in the <u>post-arrest</u> investigation.

We emphasize that we are deciding a sufficiency of evidence question. Each case will rest on its own facts. We do not hold that federal officers must in all cases be the principal agents in a law enforcement action to sustain a conviction under § 111 and § 1114, or even that they must in every case be at the scene of the crime. That will depend on the facts of the particular case. We only make clear that for a "person" to be "assisting" a federal officer, there must at least be some evidence that, at the time relevant to the assault or attempt to kill, there was some mutual contemporaneous involvement from which a fact-finder can find as an evidentiary fact -- not as theory -- that the person on whom the assault or attempt was made was assisting the federal officer in the performance of his official duties. On the evidence in the record before us in this case, such assistance was lacking.[4]

---

[4]The government argues, based on our decision in <u>United States v. Smith</u>, 296 F.3d 344, 346-48 (5th Cir. 2002), that Hubner was in fact assisting Joyce even though Joyce was not on the scene when Reed assaulted and attempted to kill Hubner. In <u>Smith</u>, this Court's panel affirmed the defendants' convictions under 18 U.S.C. § 1114 based on two factors: 1) that FBI agents learned of the robbery and joined the pursuit <u>before</u> the shots were fired -- though it is not clear from the opinion, we surmise that the agents, in their chase vehicle, were physically present during the shooting; and 2) that the DPD and FBI regularly pursued investigations together under a joint task force. <u>Id</u>. at 347.

In <u>Smith</u> the FBI agents in charge of the investigation heard about the bank robbery, left their offices to investigate, and

10

In sum, the insightful district court was correct in finding that the evidence is insufficient for a reasonable jury to conclude that all the elements of the crimes at issue were established beyond a reasonable doubt with respect to Hubner's assistance of Joyce.[5]

As there are no remaining federal officers Hubner could have assisted, we affirm the district court's judgment of acquittal.

III

Reed has raised two issues on cross-appeal.  As a result of our resolution of the government's appeal by affirming the district court, we need not address these issues because Reed now stands acquitted of the appealed charges.

IV

For the foregoing reasons, the district court's judgment is

---

eventually joined the chase.  The DPD acted in full cooperation with the FBI -- who were apparently present during the vehicular pursuit -- and the defendants were only charged for attempted murder in connection with shootings that occurred during the FBI's active involvement.

[5]The government alternatively asks us to reinstate the jury verdicts because Hubner was at least assisting his fellow Dallas policeman, Westphalen, when Reed assaulted and attempted to kill Hubner.  This argument hinges on Westphalen's status as a member of the joint FBI-DPD task force; the government argues that Westphalen was exercising his task force duties and consequently he was a "federal officer" for the purposes of §§ 111 and 1114.

The government's argument fails, if for no other reason, because it ignores the reasoning behind our precedents, which have only considered state law enforcement officials "federal officers" when the state officers were both cooperating with and under the control of federal officials, see, e.g., United States v. Hooker, 997 F.2d 67, 74 (5th Cir. 1993), and that is not the case here.

11

AFFIRMED.