# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1900

_____

United States of America

*Plaintiff - Appellee*

v.

Zerak Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 16, 2023
Filed: August 10, 2023

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Zerak Brown appeals his convictions for assault on a federal officer, *see* 18 U.S.C. § 111(a), and possession of a firearm in furtherance of a crime of violence, *see* 18 U.S.C. § 924(c)(1). We affirm.

# I.

Jeffrey Johnson is a master sergeant for the Missouri State Highway Patrol ("MSHP") and a task force officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). He serves in both roles simultaneously, with no set hours dedicated to either. As a task force officer for ATF, he investigates violations of federal firearm statutes and does not need approval to pursue an investigation. Officer Johnson routinely gathers cases from the MSHP that have a possible federal nexus and prepares them for federal prosecution.

In October 2020, the Viburnum Police Department ("VPD") requested MSHP assistance for an investigation into an alleged sexual assault committed by Zerak's father, Ira Brown, at the house they shared. Officer Johnson and another MSHP officer reported to the VPD, and VPD officers briefed them and explained that Ira was suspected of illegally possessing automatic weapons. *See* 18 U.S.C. § 922(o)(1) (criminalizing the transfer or possession of an automatic weapon). From then on, Officer Johnson had it "in the back of [his] mind to be on the lookout for anything that would potentially be a fully-automatic weapon."

After speaking with the alleged sexual-assault victim, Officer Johnson and the other MSHP officer visited Ira's workplace to interview him. The officers went to his workplace rather than house because they were concerned about his possession of weapons, including automatic ones. Following the interview, Officer Johnson, the other MSHP officer, and two VPD officers went to the Brown house to recover the victim's belongings and photograph evidence related to the sexual assault. Officer Johnson also intended to investigate illegal firearm possession if he saw any automatic weapons in the house.

When they arrived at the house, Zerak was standing on the front porch. He was uncooperative and agitated. He tried to go back inside, but Officer Johnson grabbed his hand to stop him, fearing that Zerak would arm himself. Although the officers attempted to de-escalate the situation, Officer Johnson and Zerak got into a

scuffle that led to them wrestling on the ground in front of the house. Officer Johnson tried to get Zerak in a neck restraint, but Zerak got away. After failing to catch him, Officer Johnson returned to the house and encountered Ira returning home. Ira ignored Officer Johnson's commands and ran inside. Officer Johnson did not follow because he was concerned about the kind of weapons that might be in the house.

Officer Johnson then discussed the situation with his supervisors and decided to set up a loose perimeter at the house to monitor and secure it with the assistance of other officers. He then left to apply for a search warrant for the house based on the sexual-assault allegations. When he returned to photograph the house for the warrant application, he found Zerak loading things into a truck and carrying a rifle. Officer Johnson tried to arrest him, but Zerak escaped again. Officer Johnson seized two AR-style rifles from the truck.

Officer Johnson immediately told his fellow officers what had happened and instructed them to monitor the area. MSHP Troopers Chris Wakefield and Adam Shipley each positioned themselves in their cars within a few blocks of the house. Iron County Sheriff Roger Medley was in the car with Trooper Wakefield. Trooper Shipley saw Zerak cross the street and, after seeing the troopers, run down a driveway next to the Brown house. The troopers followed him down the driveway, where Zerak pointed an AR-15 rifle at them before running away. Finally, Zerak was arrested the following day.

Zerak was indicted for two counts of assaulting a federal officer, *see* 18 U.S.C. § 111(a), and one count of using a firearm to further a crime of violence, *see* 18 U.S.C. § 924(c)(1). Section 111(a) criminalizes "forcibly assault[ing] . . . any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." Section 1114 refers to "any officer or employee of the United States or of any agency in any branch of the United States Government" or "any person assisting such an officer or employee in the performance of such duties or on account of that assistance." The first assault count was based on Zerak's

altercation with Officer Johnson; the second on Zerak's pointing his rifle at Troopers Shipley and Wakefield and Sheriff Medley. The third count, using a firearm to further a crime of violence, was based on the second assault count.

At trial, Zerak moved for judgment of acquittal at the close of the Government's case and at the close of his own, challenging the sufficiency of the evidence for all counts. The district court[1] denied both motions. Zerak was convicted of all three counts, and the district court denied his subsequent motion for reconsideration of the denial of his judgment of acquittal. Zerak was sentenced to 125 months' imprisonment. He appeals his convictions.

## II.

We review *de novo* the district court's denial of a motion for judgment of acquittal, viewing the record in the light most favorable to the government, resolving all evidentiary conflicts accordingly, and accepting all reasonable inferences supporting the jury's verdict. *United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022). We reverse a district court's denial of a motion for judgment of acquittal "only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

Zerak does not dispute that Officer Johnson qualifies as a federal officer under § 111. *See United States v. Luna*, 649 F.3d 91, 101-02 (1st Cir. 2011) (concluding that a local police officer who was deputized as a federal task-force member qualifies as a federal officer under § 111). Rather, he argues that Officer Johnson was not "engaged in . . . the performance of official duties" as a federal officer when he was assaulted because he was investigating only a sexual assault, a state offense. *See* §§ 111(a), 1114. Zerak also argues that the state officers were not assisting Officer

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Johnson "in the performance of such duties" when they were assaulted. *See* §§ 111(a), 1114. Both issues are fact questions that the jury decided. *See United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *cf. United States v. Reed*, 375 F.3d 340, 345 (5th Cir. 2004) (per curiam).

"Engaged in the performance of official duties" means "acting within the scope of what the agent is employed to do" as opposed to "engaging in a personal frolic of his own." *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995). When evaluating whether an officer was acting within the scope of his role as a federal officer, we look to "whether the officer's actions fall within the agency's overall mission" or are otherwise "what an officer ought to do because of being an officer." *Id.* We do not look merely to whether the officer is performing a function within his job description or "abiding by laws and regulations in effect at the time of the incident." *Id.* There is no bright-line test. *United States v. Boone*, 738 F.2d 763, 765 (6th Cir. 1984) (per curiam).

We begin with the assault of Officer Johnson. Zerak emphasizes that Officer Johnson relied solely on a speculative tip about Ira possibly violating federal firearms law without investigating or corroborating the tip by, for example, asking Ira about automatic weapons. Essentially, Zerak argues that Officer Johnson was really investigating a state sexual-assault crime and therefore could not have been performing official *federal* duties.

We are not persuaded. Officer Johnson testified that the tip about Ira's possible possession of automatic weapons caused him to investigate that federal offense in addition to the possible state sexual-assault offense. He testified that when he went to the house the first time, it was in the back of his mind to look for possible firearms violations. Indeed, his concern about the possible access to weapons is the reason he did not let Zerak go back inside the house. Thus, the jury could have concluded that Officer Johnson was fulfilling the mission of the ATF to enforce federal firearms statutes when he went to the Brown home. *See* 28 U.S.C. § 599A(b)(1). To be sure, he was also conducting a state investigation, but an officer

can be "engaged in the performance of official [federal] duties" while simultaneously fulfilling state duties. *See Luna*, 649 F.3d at 102 (holding that an officer who played a "dual role" as a state and federal officer at the relevant time was "engaged in the performance of federal duties"). We therefore affirm Zerak's conviction for assault against Officer Johnson.

Next, Zerak argues that there was insufficient evidence to find that the state officers were assisting Officer Johnson "in the performance of [official] duties." *See* § 1114. If we agree with Zerak, the conviction for using a firearm to further a crime of violence must also be reversed because it depends on the count for assault of the state officers. Zerak cites *United States v. Reed*, where the Fifth Circuit held that "for a 'person' to be 'assisting' a federal officer, there must at least be some evidence that . . . there was some mutual contemporaneous involvement from which a fact-finder can find as an evidentiary fact . . . that the person on whom the assault or attempt was made was assisting the federal officer in the performance of his official duties." 375 F.3d at 345. There, an FBI agent had arrived after the defendant had been arrested for assaulting a state officer, so the Fifth Circuit concluded that there was no evidence that the state officer was assisting the federal officer under § 1114. *Id.* at 344.

Here, there is sufficient evidence that Troopers Shipley and Wakefield and Sheriff Medley were assisting Officer Johnson "in the performance of [official] duties" when they were assaulted. Unlike in *Reed*, the state officers were already working with Officer Johnson before Zerak pointed a gun at them. After Zerak's second escape, Officer Johnson continued to believe that Zerak or Ira might possess automatic weapons. Officer Johnson took two rifles from Zerak's car, requested the assistance of Troopers Shipley and Wakefield to monitor the area, and briefed them on his encounter with Zerak. Zerak emphasizes that the state officers did not know about Officer Johnson's plan to look for possible automatic weapons and that they were securing the house so he could get a search warrant related to the state sexual-assault investigation. But all that is required is that the state officers provided "supplemental help or support" to Officer Johnson "in carrying out some task of

mutual involvement." *See id.* The assisting officers did not need to know about the federal investigation when the officer directing their actions, Officer Johnson, simultaneously was conducting a federal investigation. *See United States v. Smith*, 296 F.3d 344, 347 (5th Cir. 2002) (affirming a conviction under § 1114 where one officer was conducting a federal investigation even though the assisting officers were unaware of the federal investigation). In sum, a reasonable jury could find that Troopers Shipley and Wakefield and Sheriff Medley were assisting Officer Johnson in determining whether there were federal firearms violations—a task of mutual involvement.

## III.

For the foregoing reasons, we affirm Zerak's convictions.

_____