RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-5627

RONALD BEDFORD,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cr-20165-1—Samuel H. Mays, Jr., District Judge.

Argued: December 5, 2018

Decided and Filed: January 23, 2019

Before: DAUGHTREY, GIBBONS and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Christopher E. Cotten, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Christopher E. Cotten, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge. In an act of road rage, Ronald Bedford fired two shots at a truck driver while they both headed westbound on Interstate 40 ("I-40") in

Tennessee. The truck driver, P.D., was employed by P&R Trucking, a private trucking company that had a contract with the United States Postal Service ("USPS") to transport mail. At the time of the shooting, P.D. was carrying U.S. mail. Bedford was charged with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a person assisting officers and employees of the United States, while that person was engaged in the performance of official duties, and in doing so, using a dangerous weapon, all in violation of 18 U.S.C. §§ 111(a)(1), (b). Bedford then filed a motion to dismiss the indictment for lack of jurisdiction, contending that the truck driver was not an officer or employee of the United States within the meaning of 18 U.S.C. § 1114, which is incorporated in 18 U.S.C. § 111. The district court denied the motion, finding that the truck driver was a person assisting a federal officer or employee, and the truck driver therefore fell within the statute's reach. Bedford now appeals that denial. In this case of first impression for our court, we agree with the district court that when a private mail carrier, pursuant to formal contract, carries U.S. mail on behalf of the USPS, he assists an officer or employee of the United States in the performance of official duties. We therefore affirm Bedford's conviction under 18 U.S.C. §§ 111(a)(1), (b).

I.

P&R Trucking, based in Sparta, Tennessee, is a private trucking company that contracts with the USPS to transport mail. P&R "began as strictly a contractor for the USPS" and now provides contract as well as freight services. P&R TRUCKING, INC., http://prtrucking.us/sparta-freight-services (last visited Nov. 14, 2018). P&R is just one of many private trucking companies with whom the USPS contracts to provide mail delivery services.

On August 7, 2016, P.D., a truck driver for P&R Trucking, was transporting U.S. mail for the USPS from Cookeville to the USPS Network Distribution Center in Memphis, Tennessee, when he encountered a car driven by defendant Robert Bedford on I-40 West. As they maneuvered around each other and a construction zone on the I-40 West and I-240 West interchange, Bedford pulled in front of P.D., blocked the left lane and left shoulder, and exited his vehicle. P.D. stated that it appeared that Bedford intended to cause an accident. P.D. then reversed his truck, went around Bedford's vehicle, and continued down 1-40 West. As P.D. approached the Warford Street exit, however, Bedford caught up and pulled up next to the left

fender of the truck. Bedford then fired two shots into the truck before exiting I-40 onto Warford Street. Subsequent investigation of the truck revealed that bullets struck two of the rear driver's side tires and the frame of the trailer near the rear axle.

Uninjured but "shaken," P.D. called 911, provided Bedford's license plate number, and then continued on to the USPS Network Distribution Center in Memphis. CA6 R. 39, Presentence Report, Page ID 106. In response to P.D.'s call, officers with the Memphis Police Department located Bedford on Warford Street, just past the off-ramp from I-40 West. The officers detained him and searched his car, finding a loaded Ruger 9mm handgun in his glove box. Officers then placed Bedford under arrest and impounded his vehicle.

In June 2017, a federal grand returned a one-count indictment charging Bedford. The indictment alleged:

> On or about August 7, 2016 in the Western District of Tennessee, the defendant, Ronald Bedford, did forcibly assault, resist, oppose, impede, intimidate, and interfere with P.D., a person assisting officers and employees of the United States Postal Service, while P.D. was engaged in the performance of his official duties, and in doing so, utilized a dangerous weapon, that is, a handgun, in violation of Title 18, United States Code, Section 111(a)(1) and (b).[1]

DE 1, Indictment, Page ID 1. Section 111(a) applies to "whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with *any person designated in section 1114* of this title while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1) (emphasis added). Those designated in § 1114 include:

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or *any person assisting such an officer or employee in the performance of such duties or on account of that assistance* . . . .

§ 1114 (emphasis added).

---

[1]18 U.S.C. § 111(b) enhances the penalty for acts committed with a deadly or dangerous weapon. 18 U.S.C. § 111(b).

In October 2017, Bedford filed a motion to dismiss the indictment for lack of jurisdiction under Fed. R. Crim. P. 12(b).  He argued that P.D. was not a person designated in 18 U.S.C. § 1114 and, therefore, was not covered by 18 U.S.C. §§ 111(a), (b).  The district court denied Bedford's motion.  Concluding that P.D. qualified as a person assisting a federal officer or employee, the court reasoned that P.D. "was a contract driver, performing the same functions as a Postal Service employee" and that his "work supported the Postal Service's function."  DE 27, Order, Page ID 54–55.

Following the district court's denial of his motion to dismiss for lack of jurisdiction, Bedford pled guilty, reserving the right to appeal the denial.  The court then sentenced Bedford to fifteen months of imprisonment, followed by two years of supervised release.  Bedford timely filed his notice of appeal.

## II.

In reviewing a motion to dismiss an indictment, this court reviews the district court's legal conclusions *de novo* and its factual findings for clear error or abuse of discretion.  *United States v. Trent*, 654 F.3d 574, 578 (6th Cir. 2011).  Thus, where there are "no operative facts in dispute," this court's review is *de novo*.  *Id.*  Because the applicability of 18 U.S.C. § 1114, and in turn, §§ 111(a), (b), does not involve any operative facts in dispute, this court's review is *de novo*.

## III.

On appeal, Bedford argues that the district court should have dismissed the indictment for lack of jurisdiction.  He contends that P.D. was not a person assisting a federal officer or employee in the performance of official duties under 18 U.S.C. § 1114 and that the court therefore did not have jurisdiction under 18 U.S.C. § § 111(a), (b).  We agree with the district court that P.D. fell into the ambit of 18 U.S.C. § 1114.  By transporting U.S. mail on behalf of the USPS, pursuant to his employer's contract with the USPS, P.D. was a person assisting a federal officer or employee in the performance of official duties.  We therefore affirm Bedford's conviction under 18 U.S.C. § § 111(a), (b).

A.

Whether a contract mail carrier who carries U.S. mail on behalf of the USPS is a person assisting a federal officer or employee under 18 U.S.C. § 1114 is an issue of first impression for this court. In our analysis, "[w]e start, as always, with the language of the statute." *Williams v. Taylor*, 529 U.S. 420, 431 (2000). When looking at the language of the statute, this court "examines the plain meaning of its words." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017). "It is well established that 'when the statute's language is plain, the sole function of the courts— at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). In doing so, "no clause, sentence, or word of a statute should be read as superfluous, void, or insignificant." *In re City of Detroit*, 841 F.3d 684, 696–97 (6th Cir. 2016) (internal quotation marks and citation omitted). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (brackets in original)). Thus, in cases where "the language is ambiguous or leads to an absurd result, the court may look at the legislative history of the statute to help determine the meaning of the language." *In re Corrin*, 849 F.3d at 657 (citing *Chrysler Corp. v. Comm'n*, 436 F.3d 644, 654 (6th Cir. 2006)). But where the statutory language is unambiguous, our inquiry both begins and ends with the text itself. *See Ron Pair Enters., Inc.*, 489 U.S. at 240–41 (noting that "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

Here, the language of 18 U.S.C. § 1114 is unambiguous, coherent, and consistent with the broader statutory scheme. Thus, we do not inquire beyond the plain meaning of the statute. *See id.* As § 1114 applies to "any person assisting . . . an officer or employee [of the United States] in the performance of such duties,"[2] the narrow question is what it means to assist, and the

---

[2] In 1996, Congress amended the statute. Prior to amendment, it contained a lengthy list of specific federal officers and employees, and the only non-governmental employees covered were those "employed to assist

answer lies within the word's plain and ordinary meaning, as defined in the dictionary and by our sister circuits and the Supreme Court.

In discerning the plain meaning of "assist," this court may look to a dictionary definition for guidance. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060 (6th Cir. 2014). Merriam-Webster Dictionary defines "assist" as "to give usually supplementary support or aid to" or "to give support or aid." *Assist*, MERRIAM-WEBSTER.COM, http://merriam-webster/com/dictionary/assist (last visited Oct. 31, 2018). While the Sixth Circuit has not, some of our sister circuits have analyzed what "assist" means within the context of § 1114. For example, the Fifth Circuit found that "[t]he meaning of the verb 'assist' is thus clear and uncontroverted: It means to provide supplemental help or support in carrying out some task of mutual involvement." *United States v. Reed*, 375 F.3d 340, 344 (5th Cir. 2004). The Supreme Court's analysis of what it means to "act[] as an assistant to a federal officer" within the context of the federal removal statute is also instructive. *Watson v. Philip Morris Co.*, 551 U.S. 142, 151 (2007) (noting that the federal removal statute apples to "private persons who lawfully assist the federal officer in the performance of his official duty") (internal citations omitted). Here, the Supreme Court explained that a private person can invoke the federal removal statute when his acts "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphasis omitted).

Thus, applying the plain and ordinary meaning of "assist," as explained by Merriam-Webster Dictionary and in relevant case law, P.D. was a person assisting an officer or employee of the United States. As a threshold matter, the USPS is "an agency or branch" of the United States government and is therefore encompassed by 18 U.S.C. § 1114. *See United States v. Hopper*, 436 F. App'x 414, 424 (6th Cir. 2011) (citing 39 U.S.C. § 201). By carrying U.S. mail, P.D. provided "supplemental help or support" to the USPS, an agency of the federal government, in a task of "mutual involvement." *See Reed*, 375 F.3d at 344. Moreover, P.D.'s transport of

---

[a United States marshal] or deputy marshal." 18 U.S.C. § 1114 (1995), *amended by* 18. U.S.C. § 1114(a) (Supp. 1996). While it is unnecessary to study the amendment in order to decide this case, *see Lamie*, 540 U.S. at 534, 539, the change suggests Congress's intent to broaden the statute's reach to apply not only to specific officers, and one specific assistant, but instead to all federal officers and those who provide assistance. *See United States v. Luedtke*, No. CRIM 13-40(1) DWF, 2013 WL 3974430, at *11 (D. Minn. July 30, 2013) ("Thus, if anything, the amendment expanded, not contracted, the statute's reach."), *aff'd*, 771 F.3d 453 (8th Cir. 2014).

United States mail was an effort to "help carry out[] the duties or tasks of the federal superior." *See Watson*, 551 U.S. at 151. Had it not been for P.D. or another contract driver, the USPS would have had to deliver the mail itself. Thus, when P.D. transported mail, he both furthered the interest of the USPS to deliver mail and also tangibly contributed to that interest by physically transporting it. Hence, under a plain and ordinary interpretation of "assist," when P.D. transported United States mail, a job that the USPS would otherwise do itself, he assisted an officer or employee of the USPS in official duties.

B.

Bedford argues that P.D. did not assist the USPS under § 1114 because "there was no direct federal participation on the date in question," P.D. was not "acting on loan to a federal agency," and P.D. was not acting upon "orders or instruction from anyone at the USPS." CA6 R. 12, Bedford Br., at 30. But surely P.D. did not have free reign to transport United States mail to any destination, on any timeline, that he desired. And more importantly, while no court has addressed this issue in the context of a contract postal employee carrying United States mail, it is well established that private employees who, subject to government contracts, perform work that federal employees would otherwise do, and, in doing so, further the interests of the federal government, fall within the ambit of § 1114, and thus § 111.

For example, in *United States v. Matthews*, the Second Circuit concluded that a handyman employed by a private company under contract to repair a wall in a house that had been seized by the federal government was "employed to assist" the federal officers under § 1114. 106 F.3d 1092, 1096 (2d Cir. 1997). In reaching its conclusion, the court noted that the statute "embraces . . . persons working for public or private entities that furnish services to the [federal government] under contract." *Id.* Similarly, the Tenth Circuit found that a county detention center officer was assisting an officer or employee of the United States when the county detention center had contracted with the United States Marshals to house federal prisoners. *United States v. Ama*, 97 F. App'x 900, 902 (10th Cir. 2004). The court reasoned that even though the officer did not have a federal source of wages, was not cross-deputized, and was not supervised by a federal employee, he "was acting pursuant to a contract to provide assistance to the United States Marshal, whose official duties include housing prisoners awaiting federal

trial. Thus, he was performing the same duties and functions that a federal officer would perform." *Id.*

The Fourth Circuit reached the same result in a case involving a private prison guard, concluding that contract employees who serve "precisely the same federal interest" that the federal employee would otherwise serve fall within § 1114, as the statutory scheme "applies 'to protect both federal officers and federal functions.'" *United States v. Murphy*, 35 F.3d 143, 146 (4th Cir. 1994) (quoting *United States v. Feola*, 420 U.S. 671, 671 (1975) (emphasis omitted)). The court explained "that [the private employee] was not directly controlled by a federal agent or that a federal agent was not present does not diminish our reasoning nor the result; neither the statutes nor the decisional law require that [the employee] be directly controlled by a federal agent before the protection of § § 111, 1114 applies." *Id.* Hence, when a contract employee serves a federal function by carrying out a federal interest, even when he is not directly supervised, he assists an officer or employee of the United States within the meaning of § 1114.

On the other hand, when a non-federal employee inadvertently serves a federal interest, but does not do so pursuant to contract or direction by the federal government, he does not assist a federal employee under § 1114. *See Reed*, 375 F.3d at 345 (holding that Dallas police officer did not assist FBI where there was no contract for services and police officer acted before FBI arrived at the scene); *United States v. Sapp*, 272 F. Supp. 2d 897, 908–10 (N.D. Cal. 2003) (holding that state officer who apprehended suspect did not assist federal officer where there was no contract and federal officers were unaware of state involvement during three week investigation).

This interpretation is also consistent with how courts have applied 18 U.S.C. § 111. In analyzing § 111, the Supreme Court noted that "we think it plain that Congress intended to protect both federal officers and federal functions, and that, indeed, the furtherance of the one policy advances the other." *Feola*, 420 U.S. at 679. While *Feola* came before the current version of § 1114 was incorporated into § 111, recent opinions have echoed the Supreme Court's earlier sentiment and applied a federal-functions approach to § 111. *See United States v. Kimes*, 246 F.3d 800, 809 (6th Cir. 2001) (applying federal functions approach to analysis of § 111); *United States v. Luedtke*, 771 F.3d 453, 455 (8th Cir. 2014) (applying federal functions approach

and concluding that county jail officers performing federal function under contract qualified as persons assisting federal officers under § 111); *United States v. Haines*, No. 2:16-cr-00137, 2017 WL 925007, at \*2 (D. Nev. Jan. 24, 2017) (applying federal-function approach and concluding that detention center employee performing federal function under contract qualified as person assisting federal officers under § 111).

Here, like the employee in *Matthews*, *Ama*, and *Murphy*, and unlike the one in *Reed* and *Sapp*, P.D. acted pursuant to contract with the federal government and furnished services that furthered the interest of the federal agency with which his employer contracted. While Bedford maintains that P.D.'s trucking company just "happened to have as one of its contracts, a contract to haul mail for the Postal Service," there is nothing inadvertent or happenstance about the contract. CA6 R. 12, Bedford Br., at 11. There is no evidence that indicates that the contract was an accident or that the USPS did not know about it. Thus, unlike the non-federal officers in *Reed* and *Sapp*, P.D. did not inadvertently serve a federal interest. His employer was contracted to carry United States mail on behalf of the USPS. Thus, despite not receiving his paycheck from the federal government or driving with a federal supervisor in the passenger seat next to him, P.D., pursuant to formal contract, performed the same duties and functions that a USPS employee would perform and furthered the interests of the federal government. *See Ama*, 97 F. App'x at 902. The USPS, in effect, acted through P.D. We therefore hold that when an employee of a private company carries U.S. mail on behalf of the USPS, pursuant to formal contract, he assists an officer or employee of the United States in the performance of official duties.

## C.

In an off-hand remark on the last page of his appeal, Bedford posits that P.D. does not fall within the ambit of 18 U.S.C. § 111 because of "the underlying fact . . . that [P.D.] was not targeted *because* he was a federal employee." CA6 R. 12, Bedford Br., at 30 (emphasis added). In effect, Bedford contends that because he shot at the truck without knowing that P.D. was carrying United States mail, the statute should not apply. But the Supreme Court has squarely foreclosed this argument. In analyzing § 111, it stated that "[a]ll the statute requires is an intent to assault, not an intent to assault a federal officer." *Feola*, 420 U.S. at 684. Whether Bedford

targeted P.D. *because* he was a federal officer—or assisting one—is not relevant. All that matters was that P.D. was, in fact, targeted.

IV.

For the reasons stated, we affirm the district court's denial of Bedford's motion to dismiss the indictment for lack of jurisdiction.