NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0603n.06

No. 19-1212

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 09, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NICHOLAS PASIAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

BEFORE: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Nicholas Pasiak appeals from the district court's order affirming the decision of an Administrative Law Judge ("ALJ") that Pasiak is not eligible for child's insurance benefits pursuant to 42 U.S.C. § 402(d) and 20 C.F.R. § 404.350. We hold that (1) the ALJ did not abuse her discretion in declining to obtain an additional medical expert opinion and rejecting Pasiak's requests to enter additional expert testimony into the record; but, (2) the record nonetheless raises a "substantial question" as to whether Pasiak could qualify as disabled under Listing 3.04(C) in Appendix 1 of Subpart P of 20 C.F.R. § 404. Therefore, we **REVERSE** and **REMAND** to the ALJ for further proceedings consistent with this opinion.

**I.**

In 2014, Pasiak, then thirty-three years of age, applied for disability benefits pursuant to 20 C.F.R. § 404.350. An applicant is eligible for such benefits, known as "child's benefits," 20 C.F.R. § 404.350, or "child's insurance benefits," 42 U.S.C. § 402(d), if several criteria are met.

*See* 20 C.F.R. § 404.350(a)(1)–(5). As relevant here, if the applicant is over eighteen, the applicant must "have a disability that began before [he] became 22 years old." *Id.* § 404.350(a)(5).

The Social Security Administration ("SSA") has a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a)(1). The first three steps involve evaluating (1) whether the claimant is engaging in work that constitutes "substantial gainful activity," (2) the "medical severity" of the claimant's impairment, and (3) whether the impairment "meets or equals" a listed impairment in Appendix 1 of Subpart P of 20 C.F.R. § 404. *Id.* § 404.1520(a)(4)(i)–(iii). A claimant is considered "disabled" if he satisfies these first three steps. If a claimant's impairment does not meet or equal a listed impairment, however, the ALJ will move on to steps four and five, under which a claimant may still be able to establish that he is "disabled." *Id.* § 404.1520(e). Steps four and five involve evaluating (4) whether the impairment prevents the claimant from returning to "past relevant work," and (5) whether the claimant is able to "make an adjustment to other work." *Id.* § 404.1520(a)(4)(iv)–(v). If the claimant satisfies neither steps one through three nor steps four and five, then the claimant is not "disabled" within the meaning of the regulations. *Id.* § 404.1520(a)(4).

Applying the five-step disability analysis, the ALJ found that Pasiak was not disabled prior to December 10, 2002, the date Pasiak turned twenty-two. At step one, the ALJ found that Pasiak had not engaged in substantial gainful activity since October 19, 1998, the alleged onset date of his disability. At step two, the ALJ found that, prior to attaining age twenty-two, Pasiak's inflammatory bowel disease, chronic sinusitis, bronchial asthma, chronic interstitial disease, cilia syndrome and Otitis media were "severe" within the meaning of the regulations. However, at step three, with no discussion of any facts or specific listings, the ALJ concluded that Pasiak's impairments singly or in combination did not meet or medically equal one of the listings in

Appendix 1 of Subpart P of 20 C.F.R. § 404.  At step four, the ALJ found that Pasiak could not perform any past relevant work, but at step five, the ALJ denied Pasiak benefits because she found that there were jobs that exist in significant numbers in the national economy that Pasiak could perform.

Pasiak requested a review of the ALJ's decision.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Pasiak's request for review. Pasiak then appealed to the district court.  After full briefing by the parties, a magistrate judge issued a Report and Recommendation affirming the Commissioner's decision.  The district court then adopted that recommendation over Pasiak's objections, and judgment was entered in September 2018.  Pasiak filed a timely notice of appeal.

**II.**

Pasiak advances two arguments on appeal: first, that the ALJ erred in failing to order and admit additional medical expert testimony to assist in evaluating the evidentiary record; and second, that the ALJ erred in concluding that, under step three of the five-step disability analysis, Pasiak did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 of Subpart P of 20 C.F.R. § 404.  Pasiak asks us to vacate the ALJ's decision and remand with orders to the ALJ to give further consideration to step three of the five-step disability analysis, and to use additional medical expert testimony in evaluating the medical evidentiary record.  Alternatively, Pasiak asks us to reverse and issue him a fully favorable decision ourselves.  We will address Pasiak's arguments in turn.

**A.  ALJ's Refusal to Order and Admit Additional Medical Expert Opinion**

Pasiak first claims that the ALJ erred when she rejected his requests to enter additional expert testimony into the record and order additional medical expert opinion.  "An ALJ has

discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917). We review the ALJ's decision for abuse of discretion. *Id.* at 356.

Pasiak complains that the ALJ failed to take into consideration any of the medical records he submitted after October 14, 2014. But, most of those records are not relevant to the period in question, and the ones that are relevant to the period in question are cumulative of the evidence considered by the state agency physician. And given that there was ample evidence on Pasiak's impairments in the record for the ALJ to evaluate his disability, the ALJ's election not to request a second medical expert opinion was not an abuse of discretion. *See id.* ("Given that there was already sufficient testimony on Foster's impairments in the record for the ALJ to evaluate her mental condition and residual functional capacity, the ALJ did not abuse his discretion in denying Foster's requests for additional testing or expert testimony.").

## B.     ALJ's Step-Three Analysis

When considering whether a claimant's impairment "meets or equals" a listed impairment in the appendix of the regulations, we have held that an ALJ is required to "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). We have also held that "the ALJ need not discuss listings that the applicant clearly does not meet. . . . If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (first alteration added) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925) (6th Cir. 1990)). Therefore, to decide

whether the ALJ erred in her cursory step-three analysis, we must determine whether the record raises a "substantial question" as to whether Pasiak could qualify as disabled under one of the listings in Appendix 1 of Subpart P of 20 C.F.R. § 404.[1] If so, the ALJ's failure to discuss that listing would constitute reversible error. *See Reynolds*, 424 F. App'x at 416.

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641–42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

On appeal, Pasiak contends that he demonstrated that he reasonably could meet or equal listings 3.04(B), 3.04(C), and 5.06.[2] We agree with the district court that Pasiak has not pointed

---

[1] At step three, the ALJ summarily stated:

> The medical evidence does not include findings that would satisfy the applicable listings for any of the severe impairments that are documented. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments.

The Commissioner conceded that this conclusion, which omitted discussion of any facts or specific listings, was legal error. (Appellee Brief at 11). The district court did not bind itself to the Commissioner's concession. Neither do we. "We are not bound to accept, as controlling, stipulations as to questions of law." *Sanford's Estate v. Comm'r of Internal Revenue*, 308 U.S. 39, 51 (1939) (citation omitted); *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

[2] Pasiak also suggests that his conditions met the criteria in Listings 3.02, 3.03, 3.07, and 14.07, (*see* Appellant Brief at 17, 25), but he does not develop this argument. The argument is therefore forfeited. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alterations in original) (citations omitted) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

to specific evidence demonstrating that he had a listed disability as described in Listings 3.04(B) and 5.06 before turning twenty-two. But we disagree with the district court with regards to Listing 3.04(C), and find that Pasiak has pointed to specific evidence demonstrating that he reasonably could meet or equal the criteria for disability under that Listing. We will discuss these three Listings below.

### 1. Listing 3.04(B)

To meet the criteria for disability under Listing 3.04(B), a claimant must show:

> Episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure (documented according to 3.00C), requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours or treatment counts as two episodes, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of episodes[.]

20 C.F.R. pt. 404, subpt. P, app. 1 § 3.04(B) (2016).[3] In support of Pasiak's argument that he meets or equals Listing 3.04(B), Pasiak relies upon fifteen doctor's visits between December 1998 and December 1999. (Appellant Brief at 22). The vast majority of these doctor's visits, however, did not constitute "requir[ed] physician intervention" due to "[e]pisodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure." 20 C.F.R.

---

[3] Listings 3.04(B) and (C) were revised on June 9, 2016. *See* Revised Medical Criteria for Evaluating Respiratory System Disorders, 81 Fed. Reg. 37,138, 37,148 (June 9, 2016) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 3.04(B)–(C)). But, we will review the Commissioner's final decision using the Listing that was in effect on April 11, 2016, the time the Commissioner issued the final decision in Pasiak's case. *See* Revised Medical Criteria for Evaluating Respiratory System Disorders, 81 Fed. Reg. at 37,139 n.3 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

pt. 404, subpt. P, app. 1 § 3.04(B) (2016).  Pasiak relies on the contents of these doctor's visits to

support his qualification under Listing 3.04(B):

- On December 17, 1998, for a "[r]echeck," where an impression of bronchiectasis was noted. But, the doctor also noted that Pasiak's lungs were "[c]lear" and functioning normally.[4]
- On January 13, 1999, because he "[d]idn't feel well" and had "[s]ome chest tightness."  There was a mild increase in respiratory effort and mild decrease in air exchange.  The physician diagnosed "viral syndrome" and prescribed Cipro and Bioxin.
- On January 25, 1999, when Pasiak reported that he was "doing well" and that his "lungs 'feel' better."
- On February 17, 1999, when he reported that he was "doing very well with asthma . . . [g]ood exercise tolerance" and his lungs were "[c]lear."
- On March 13, 1999, when he presented with chest congestion, cough, and yellow sputum.  He had rhonchi and a mild decrease in air exchange.  He was assessed with, among other things, interstitial cystitis, ulcerative colitis, chronic sinusitis, and acute exacerbation of bronchitis.
- On March 29, 1999, when his lungs were "[c]lear" and he reported that he "[h]as been fine this past week."
- On April 7, 1999, when he presented with moderate rhonchi and wheezes, mild increase in respiratory effort, and moderate decrease in air exchange.  The physician prescribed increased use of Flovent and increased intake in fluids and Tylenol.
- On April 26, 1999, when he reported that his lungs were "[c]lear" and respiratory effort "[n]ormal."
- On May 17, 1999, when he had a "stuffy nose" but reported that his lungs were "[c]lear" and respiratory effort "[n]ormal."
- On June 28, 1999, when he reported that he was "[d]oing very well."
- On July 23, 1999, when he reported that his lungs were "[c]lear" and respiratory effort "[n]ormal."
- On August 11, 1999, when he reported that the sinusitis had resolved and he was feeling "well."
- On August 18, 1999, when he reported that he had some pain after a wisdom tooth extraction.
- On October 7, 1999, when he was diagnosed with pneumonia and was prescribed Z-Pak.[5]

---

[4] Pasiak refers to a December 11, 1998 note that does not appear to be in the record. (Appellant Brief at 22, 26).

[5] Pasiak refers to a September 17, 1999 note that does not appear to be in the record. (Appellant Brief at 22, 26).

- On November 6, 1999, when the only lung notation was rhonchi in the right lung, but where he reported that his respiratory effort was "[n]ormal," that he "feels better," and that he was feeling some pain from a car accident.

(R. 9-8 at PageID 384–400).

Of these fifteen doctor's visits, only four, at best, demonstrate episodes of bronchitis and/or pneumonia as required by Listing 3.04(B): (1) the January 13 visit; (2) the March 13 visit; (3) the April 7 visit; and (4) the October 7 visit.[6] But even assuming these visits qualify as "requir[ed] physician intervention" under Listing 3.04(B), they do not reflect an occurrence rate of every two months or at least six in a year, as required by the Listing. 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.04(B) (2016). Thus, the foregoing medical evidence from December 1998 to December 1999 does not raise a substantial question as to whether Pasiak met the criteria in Listing 3.04(B). *See Smith-Johnson*, 579 F. App'x at 432 (quoting *Sullivan*, 493 U.S. at 530) (emphasis in original) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Sheeks*, 544 F. App'x at 641–42 (finding that claimant did not raise a substantial question as to satisfying a listing where claimant pointed to only a few pieces of tenuous evidence addressing the listing).

---

[6] These four doctor's visits do not demonstrate episodes of "respiratory failure" under 3.04(B) and 3.00(C) because the episodes did not require "intensive treatment," including "antibiotic administration" in a "hospital, emergency room or equivalent setting." 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.00(C) (2016). When Pasiak was prescribed an antibiotic for respiratory issues—in January and October of 1999, for instance—there is no indication that the antibiotic was administered anywhere but at home. Home does not seem to be an "equivalent setting" to a hospital or an emergency room. *Id.* Also, there is no indication in the record that Pasiak ever had hemoptysis. Instead, the record indicates, "[t]here has been no hemoptysis." (R 9-9 at PageID 510).

2.      Listing 5.06

To meet Listing 5.06, a claimant must show:

A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imagining or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period;

OR

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:

1. Anemia with hemoglobin of less than 10.0g/dL, present on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that it is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. pt. 404, subpt. P, app. 1 § 5.06 (2016). As to the A criteria of this Listing, Pasiak has pointed us to no evidence in the record demonstrating any "[o]bstruction of stenotic areas . . . requiring hospitalization for intestinal decompression or for surgery." *Id.* Pasiak indicates that he was hospitalized for asthma exacerbation and ulcerative colitis exacerbation in September 2000, but he did not require any surgery or intestinal decompression at that time.

Regarding the B criteria, Pasiak has not pointed to any evidence of anemia, a serum albumin level of 3.0 g/dL or less, tender abdominal mass, perineal disease with a draining abscess or fistula (indeed, Pasiak denied any history of fistula, perineal disease, or abscess, or involuntary

9

weight loss of at least ten percent from his baseline before December 10, 2002. Pasiak did go through a period of taking daily supplemental enteral nutrition between September and October of 2000. However, because Pasiak did not experience any of the other B criteria, he did not raise a substantial question as to whether he met the Listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 5.06(B) (2016) (requiring "[t]wo of the following" criteria to be met).

       3.     Listing 3.04(C)

To meet Listing 3.04(C), a claimant must show:

> Persistent pulmonary infection accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection occurring at least once every 6 months and requiring intravenous or nebulization antimicrobial therapy.

20 C.F.R. pt. 404, subpt. P, app. 1 § 3.04(C) (2016).

Pasiak referred us to five arguable episodes of pulmonary infection, as demonstrated by (1) the January 13 doctor's visit, (2) the March 13 doctor's visit, (3) the April 7 doctor's visit, (4) the October 7 doctor's visit, and (5) a hospitalization in September 2000, when he was treated with nebulized bronchodilators and steroids for asthma exacerbation. There is no dispute that the first four episodes occurred within six months of each other. There is also no dispute that Pasiak regularly received Intravenous Immunoglobulin ("IVIG"), a form of intravenous antimicrobial therapy, before turning twenty-two.

The magistrate judge's Report and Recommendation, adopted by the district court, concluded that the medical evidence does not raise a substantial question as to whether Pasiak meets or equals the C criteria. The magistrate judge discounted the fact that Pasiak regularly received IVIG, reasoning that "it does not appear that these infusions were *required*, as plaintiff voluntarily elected to stop the treatment at times due to time constraints." (R. 16 at PageID 1250) (emphasis in original).

Although it is true that Listing 3.04(C) demands that the IVIG be "requir[ed]," 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.04(C) (2016), and although it is true that Pasiak voluntary elected to stop the IVIG due to "time constraints," (R. 9-8 at PageID 412), Pasiak has nonetheless raised a substantial question as to whether he satisfies the criteria in Listing 3.04(C). We have yet to define what "requiring intravenous . . . therapy" means in the context of Listing 3.04(C), and the ALJ did not address the issue. There are at least two plain meanings of "requiring" according to the dictionary: (1) "demand[ing] as necessary or essential" (the magistrate judge's understanding), and (2) "call[ing] for as suitable or appropriate."[7] *See Tenn. Hosp. Assoc. v. Azar*, 908 F.3d 1029, 1044 (6th Cir. 2018) (courts interpret regulations according to their plain meaning); *see also United States v. Bedford*, 914 F.3d 422, 427 (6th Cir. 2019) (dictionaries often supply plain meaning). Under either understanding, Pasiak's voluntary cessation of IVIG treatment does not necessarily mean that the treatment was not required. After all, at a doctor's visit on May 22, 2000, Pasiak's doctor stated as part of Pasiak's treatment "PLAN" that "[Pasiak] should cont. h[is] IV infusions every month." (R. 9-8 at PageID 404). Just because Pasiak elected not to follow the doctor's orders does not necessarily mean that the doctor's orders were not required within the meaning of Listing 3.04(C). Thus, the district court erred in holding that Pasiak did not raise a substantial question as to whether he met the criteria under Listing 3.04(C). *See Reynolds*, 424 F. App'x at 416 (holding that an ALJ's failure to evaluate a listing a step three was reversible error when it was "possible that the evidence Reynolds put forth could meet [the] listing."). We leave it to the ALJ to consider in the first instance what "requiring . . . intravenous therapy" means and whether Pasiak required such therapy.

---

[7] *Require*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/require (last visited Dec. 4, 2019).

**III.**

Because the record raises a "substantial question" as to whether Pasiak could qualify as disabled under Listing 3.04(C), we **REVERSE** and **REMAND** to the ALJ for further proceedings consistent with this opinion.